UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

RICHARD KISER, JR, INDIVIDUALLY
AND ON BEHALF OF T.K. AND A.K., MINORS                    PLAINTIFFS

VS.                                           CAUSE NO. 3:08CV496TSL-JCS

ALLSTATE FINANCIAL GROUP, A/K/A
ALLSTATE FINANCIAL SERVICES, L.L.C.;
LINCOLN BENEFIT LIFE COMPANY A/K/A
LINCOLN BENEFIT FINANCIAL SERVICES, INC.;
NIEZGODA AGENCY, LLC; DAVID NIEZGODA;
AND JANE/JOHN DOES 1-50                                   DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants Niezgoda Agency, LLC, and David Niezgoda to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff Richard Kiser, Jr. has responded in opposition to the motion and has moved the court to remand the case to state court.  Defendants Allstate Financial Group a/k/a Allstate Financial Services, LLC (Allstate), and Lincoln Benefit Life Company a/k/a Lincoln Benefit Financial Services, Inc. (Lincoln Benefit) have responded in support of the Niezgoda defendants' motion to remand and in opposition to plaintiff's request to remand.  Having considered the memoranda of authorities submitted by the parties, the court concludes that the motion to remand should be denied and the motion to dismiss granted.

On June 1, 2005, Richard Kiser III applied for a $300,000 life insurance policy with Lincoln Benefit Life Company through David Niezgoda, who operates the Niezgoda Agency.  He gave the agent a $130 check for the premium, and was issued a "Temporary Insurance Agreement."  A week later, on June 8, 2005, Lincoln Benefit contacted Mr. Kiser to schedule various medical exams that he evidently had been told would be required.[1]  The exams were scheduled for June 29, 2005, by mutual agreement between Mr. Kiser and Lincoln Benefit.  However, on June 18, Mr. Kiser was killed in an automobile accident.  Mr. Kiser's father, Richard R. Kiser, Jr., notified Lincoln Benefit of Mr. Kiser's accidental death in order to recover the life insurance benefits under the insurance agreement.  On June 25, 2005, Lincoln Benefit denied coverage, taking the position that no insurance coverage was in effect at the time of Mr. Kiser's death.

On June 17, 2008, plaintiff filed suit in the Circuit Court of Hinds County against Lincoln Benefit, its parent company, Allstate, and against the Niezgoda defendants, ostensibly alleging claims against "defendants" collectively for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, intentional and negligent infliction of emotional

---

[1]     The complaint does not directly allege that Mr. Kiser was told when the Temporary Insurance Agreement was issued that the tests were required, but that appears to be the implication of plaintiff's allegations.

2

distress and conspiracy, all based on allegations that Mr. Kiser

reasonably believed from the language of the Temporary Insurance

Agreement and its interpretation by David Niezgoda that coverage

was in effect from the time he paid his premium and was issued the

Temporary Insurance Agreement and yet defendants have wrongfully

refused to pay benefits due under the agreement.   Specifically,

plaintiff recites the following in his complaint:

> That at the time he applied for coverage through
> Niezgoda and paid the premium, he was issued a Temporary
> Insurance Agreement, which he believed would be in
> effect until he underwent unspecified medical exams and
> provided various lab specimens, after which it would
> lose its "temporary" status;
>
> That some of the language of the Temporary
> Insurance Agreement (TIA) was "possibly contradictory
> and misleading to the lay consumer" and therefore,
> should be construed against Lincoln Benefit and in favor
> of the lay consumer;
>
> That "[b]ased upon the language of the TIA and its
> interpretation by Defendant Niezgoda," Mr. Kiser
> believed that his signing the TIA and paying the premium
> secured him coverage, "at least temporarily;"
>
> That Lincoln Benefit's "belated and self-serving
> interpretation of the TIA to the contrary ignores key
> phrases of its contradictory language" and is illogical
> and misleading to the lay consumer;
>
> That Lincoln Benefit wrongfully denied the proceeds
> of the policy to Mr. Kiser's beneficiaries after his
> death; and that
>
> "Lincoln Benefit and the other Defendants
> wrongfully, unethically and in breach of their fiduciary
> duty acted with the intent and design of misleading Mr.
> Kiser and other lay persons as to the date of
> effectiveness of temporary coverage of the Life
> Insurance Policy drafted by Defendants.  Also or in the
> alternative, Lincoln Benefit and the other Defendants

wrongfully and unethically construed an ambiguous
contract with Mr. Kiser in its own favor after he could
no longer defend himself."

Defendants removed the case to this court on the basis of
diversity jurisdiction due to the alleged fraudulent joinder of
the Niezgoda defendants, who, like plaintiff, are Mississippi
citizens.  Following removal, the Niezgoda defendants promptly
moved to dismiss, arguing that plaintiff's complaint states no
cognizable claim for relief against them.  Plaintiff responded to
the motion, and although he did not file a separate motion to
remand, his response brief concluded with a request that the court
"grant Plaintiff's motion to remand."  Because of plaintiff's
request for remand, and the jurisdictional significance of the
Niezgoda defendants' presence in the case, the motion to dismiss
is considered in the context of a fraudulent joinder analysis.

Defendants contend that plaintiff has not presented a
colorable claim against the Niezgoda defendants, and that the case
was thus properly removed.[2]  The Niezgoda defendants are
improperly or fraudulently joined only if "there is no reasonable
basis for the district court to predict that the plaintiff might
be able to recover against an in-state defendant," Gasch v.

_____

[2]     Although the motion to dismiss was filed by the Niezgoda
defendants, Allstate and Lincoln Benefit have responded to
plaintiff's request to remand.

4

<u>Hartford Acc. & Indem. Co.</u>, 491 F.3d 278, 281 (5th Cir. 2007), which is the case here.[3]

In the motion to dismiss, the Niezgoda defendants argue that they cannot be liable for any alleged wrongful denial of benefits under the Temporary Insurance Agreement, nor for any breach of the duty of good faith and fair dealing implied in the Agreement, as they were not party to the Agreement, and are not alleged to have had any role in the denial of benefits under the Temporary Insurance Agreement.  See <u>Rogers v. Nationwide Property and Cas. Ins. Co.</u>, 433 F. Supp. 2d 772, 776 (S.D. Miss. 2006) ("Mississippi law is clear: an agent of a disclosed principal is not a party to his principal's contract and cannot be liable for its breach.").[4]

They further maintain that they cannot be liable for breach of fiduciary duty because they owed plaintiff no fiduciary duty. See <u>Tipton v. Nationwide Mutual Fire Ins. Co.</u>, 381 F. Supp. 2d 567, 571 (S.D. Miss. 2003) (stating that "a fiduciary relationship

---

[3]     To establish the propriety of removal, the removing party must show that the non-diverse defendant was fraudulently joined by showing either that: (1) there is actual fraud in the plaintiff's pleadings, or (2) plaintiff is unable to establish a cause of action against the defendant in state court.  <u>Gasch v. Hartford Accident & Indem. Co.</u>, 491 F.3d 278, 281 (5th Cir. 2007).  There is no suggestion here that there was any fraud in plaintiff's pleading.

[4]     The court notes plaintiff's allegation that "Lincoln Benefit *and the other Defendants* wrongfully and unethically construed an ambiguous contract in *its* own favor."  In fact, despite the reference to "the other Defendants," it is manifest that this allegation is directed toward Lincoln Benefit and Allstate.

does not exist between the agent for the insurer and the insured, in first party insurance contracts") (citations omitted).  They argue that they cannot be liable for intentional or negligent infliction of emotional distress because plaintiff has pled no set of facts amounting to outrageous conduct by the Niezgoda defendants, or any demonstrative harm, as needed to support these claims.  See Robinson v. Hill City Oil Co., Inc., No. 2007-CA-00320-COA, 2008 WL 2894668, 6 (Miss. Ct. App. July 29, 2008) ("To prevail on a claim of intentional infliction of emotional distress, the plaintiff must prove that the defendant's conduct was reckless, intentional, and so outrageous to such an extreme degree that it exceeds the bounds of decency and, thus, is not tolerated by a civilized community."); McGuffie v. Herrington, 966 So. 2d 1274, 1278 (Miss. Ct. App. 2007) ("If the conduct was not malicious, intentional or outrageous, there must be some sort of demonstrative harm.") (citation omitted).  Finally, they argue that plaintiff has failed to allege facts in support of his conclusory conspiracy allegation.  See Ameen v. Merck & CO., 226 Fed. Appx. 363, 371 (5th Cir. 2007) (stating that conspiracy requires a meeting of the minds on the course of action and that to state a claim of civil conspiracy against an agent, the agent must have been acting outside the scope of his agency); Guidry v. United States Tobacco Co., 188 F.3d 619, 631-32 (5th Cir. 1999) ("'[A] general allegation of conspiracy[,] without a statement of

6

the facts constituting that conspiracy, is only an allegation of a legal conclusion and is insufficient to constitute a cause of action.'")(citation omitted).

In response to the motion to dismiss, plaintiff does not contend that he has stated a claim against the Niezgoda defendants for any of the causes of action specifically set out in the complaint.  Instead, he argues that the factual recitations of his complaint identify actions taken by David Niezgoda and his agency which "made certain fraudulent or incorrect representations regarding coverage, as well as incorrect contractual and policy interpretations . . . communicated to the decedent," and that, "[m]ore importantly," the facts which have been pled state a claim against the Niezgoda defendants for failure to procure coverage for Mr. Kiser due to their lack of diligence, for which failure these defendants are individually responsible and liable.

With regard to the alleged misrepresentation and/or misinterpretation of the Temporary Insurance Agreement, it is apparently plaintiff's position that the Niezgoda defendants, purporting to interpret the Agreement, intentionally and/or negligently misrepresented to Mr. Kiser that temporary coverage would be effective upon payment of the premium and issuance of the Temporary Insurance Agreement.  There is no reasonable possibility plaintiff could succeed on this allegation.

7

As the court reads his complaint, plaintiff's position is that the Temporary Insurance Agreement either clearly provides that temporary coverage became effective upon payment of the premium, or that the agreement was ambiguous as to when temporary coverage became effective, in which event Lincoln Benefit, as the drafter of the agreement, was required to interpret and apply the agreement in favor of coverage.  In either scenario, plaintiff has no cognizable claim against the Niezgoda defendants.

If the agreement were properly interpreted as *unambiguously* providing temporary coverage upon payment of the premium, then the interpretation allegedly offered to Mr. Kiser by the Niezgoda defendants was correct and plaintiff's loss was due to Lincoln Benefit's denial of benefits contrary to the unambiguous terms of the agreement.[5]  If the agreement was ambiguous and thus could

---

[5]    In fact, the Temporary Insurance Agreement does not clearly and unambiguously provide that coverage starts when the premium is paid, and plaintiff does not seriously seem to contend that this is the case.  Rather, his main position appears to be that the Agreement was ambiguous on the issue when coverage would be in effect.  The Temporary Insurance Agreement, a copy of which was attached to plaintiff's state court complaint, recited, in relevant part:
> NO INSURANCE WILL TAKE EFFECT EXCEPT AS DESCRIBED BELOW
> When Temporary Insurance Starts
> If the payment has been accepted by us and the application for life insurance has been completed on or before the date of this Agreement, temporary insurance under the Agreement will start on the later of (1) the date of the Agreement; or (2) the date when all required medical exams have been completed and/or lab specimens (blood, urine, or oral fluid) provided.
>
> When Temporary Insurance Will Stop

reasonably have been interpreted as providing that temporary coverage was effective upon payment of the premium, then the Niezgoda defendants' alleged interpretation of the agreement to that effect was reasonable, particularly considering that under the law, any ambiguity was to be resolved in favor of coverage. Moreover, assuming for the sake of argument that the agreement was ambiguous, plaintiff has not alleged that the Niezgoda defendants had any reason to anticipate that Lincoln Benefit would fail to construe the agreement in favor of coverage.[6]

---

Temporary insurance under this Agreement will stop on the first of the dates below
1. The date we write to the Owner that we have stopped considering the application.  We have the absolute right to stop
2. The date we advise the Owner that a medical exam or lab specimen is required...  Insurance will start again ... when the last of such medical requirements is done. We have the absolute right to require such medical exams or lab specimens.
3. The date we agree to issue the coverage as applied for in the application.  The insurance will then be provided By the policy
4. The date we offer to issue insurance other than as applied for in the application.

We will refund all payments for which this Agreement was given if we stop considering the application. . . .

[6]Plaintiff has understandably not contended that the Niezgoda defendants' alleged interpretation of the agreement was contrary to the clear terms of the agreement, perhaps because he recognizes that if the agreement clearly provided that temporary coverage would start only after Mr. Kiser had taken the required medical exams, his claim would be foreclosed by the rule that in the face of the clear terms of the insurance agreement, a party's reliance upon contrary representations by the agent is unreasonable.  See Hutton v. American General Life & Acc. Ins. Co., 909 So. 2d 87, 94 (Miss. Ct. App. 2005).

In addition to his contention that he has alleged a claim for misrepresentation, or at least misinterpretation, by the Niezgoda defendants, plaintiff also argues in his response to the motion to dismiss that he has stated a claim against the Niezgoda defendants for failure to procure insurance.  However, there is no hint of any such claim in plaintiff's complaint, in the facts pled or the causes of action actually identified.  Plaintiff cannot secure remand, or avoid dismissal of the Niezgoda defendants, on the basis of a claim that has not been asserted in his complaint.  See Chemtreat, Inc. v. Chemtech Chemical Servs., LLC, Civil Action No. 1:07-CV-146, 2007 WL 4353420, 3 (E.D. Tex. Dec. 7, 2007) (stating that "[a] determination of fraudulent joinder must be based on an analysis of the causes of action alleged in the complaint at the time of removal") (citing Manguno v. Prudential Property and Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002).

For all of these reasons, the court concludes that plaintiff has no reasonable possibility of recovery against the Niezgoda defendants, and that plaintiff's request to remand should be denied, and these defendants' motion to dismiss should be granted.

Accordingly, it is ordered that plaintiff's request to remand is denied, and it is further ordered that the Niezgoda defendants' motion to dismiss is granted.

SO ORDERED this 4th day of November, 2008.


                              /s/ Tom S. Lee
                              UNITED STATES DISTRICT COURT